**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LIRE ERSADO,<br><br>Plaintiff,<br><br>v.<br><br>ROCKPOINT GROUP, LLC, et al.<br><br>Defendant. | Case No. 16-cv-2455 (RMM) |

**MEMORANDUM OPINION**

This case arises from an incident that occurred while Plaintiff Lire Ersado was a guest at the Washington Marriott Georgetown Hotel ("Georgetown Marriott"), which is owned and operated by Defendant Marriott Hotel Services, Inc. ("Marriott"). Rockpoint Group, LLC ("Rockpoint") was the owner of the Georgetown Marriott during the incident at issue. Mr. Ersado severed his finger on a door while attempting to enter a guestroom with his luggage and has raised claims of negligence and negligence *per se*. *See* Notice of Removal, Compl. ¶¶ 10–12, ECF No. 1-3. After discovery, Marriott and Rockpoint (together, "Defendants") filed a Motion for Summary Judgment, seeking summary judgment on Mr. Ersado's negligence and negligence *per se* claims in addition to its contributory negligence affirmative defense. *See* Defs.' Mot. for Summ. J. ("Defs.' Mot."), ECF No. 23. After considering the relevant filings[1] and the record, the Court granted Marriott and Rockpoint's motion for summary judgment,

[1] The following filings are also pertinent to the pending motion: Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 25; Suppl. Mem., ECF No. 26; Defs.' Reply ("Reply"), ECF No. 31.

finding that Mr. Ersado "failed to present sufficient evidence to establish either a triable issue of fact or material factual dispute regarding his claims of ordinary negligence and negligence per se." Min. Order, Mar. 31, 2021. Specifically, the Court concluded that "the negligence per se claims fail as a matter of law because Mr. Ersado has not demonstrated that the alleged defect in the door violated specific regulatory or statutory safety guidelines that go beyond the general duty to exercise reasonable care and are designed to protect hotel guests like Mr. Ersado." *Id.* The Court further concluded that "the negligence per se claims based on Defendants' alleged failure to cure a dangerous condition cannot proceed to trial because Mr. Ersado has not presented sufficient evidence from which a jury could find or reasonably infer that Defendants had actual or constructive notice of the alleged defects in the hotel room door." *Id.* This Memorandum Opinion sets forth the reasoning underlying those rulings.

## BACKGROUND

### A. Undisputed Facts

On March 2, 2015, Mr. Ersado was a guest in Room 952 at the Georgetown Marriott, located at 1221 22nd Street, N.W. in Washington, D.C. *See* Pl.'s Opp'n, at 2; Defs.' Mot. at 4.[2] While using his back and left hand to support the door, Mr. Ersado attempted to bring his luggage into his room. *See* Pl.'s Opp'n at 2; Defs.' Mot. at 4–5. Mr. Ersado successfully got one piece of luggage into the room, but when he attempted to move the second piece, the door closed and his hand was shut in the hinge side of the door jamb. *See* Pl.'s Opp'n at 2; Defs.' Mot at 5. As a result, the tip of Mr. Ersado's left ring finger was severed. *Id.*

[2] Page citations refer to ECF header pagination, as opposed to the document's original pagination.

After the incident, Mr. Ersado videotaped the door that caused his injury. *See* Pl.'s Opp'n at 3; Defs.' Mot. at 5. Mr. Ersado filmed two videos of the door opening and closing from a 90-degree angle, which depicted the closing speed of the door. *See* Pl.'s Opp'n at 3; *id.*, Ex. 2, Decl. of Lire Ersado ("Ersado Decl.") at 120; Defs.' Mot. at 5. Mr. Ersado only filmed the door; he did not reenact his movements from the incident that culminated in his injury. *See* Ersado Decl. at 120; Pl.'s Opp'n at 3; Defs.' Mot. at 6. Mr. Ersado sent the two recordings to Michael Leshner, an engineering expert, for his opinion on the door's safety. *See* Pl.'s Opp'n at 3; Defs.' Mot. at 6. Mr. Leshner based his expert opinion solely on Mr. Ersado's recordings and knowledge that Mr. Ersado injured his finger while attempting to get into the room with his luggage. *See* Pl.'s Opp'n at 3; Defs.' Mot. at 6. Mr. Leshner ultimately determined that the door closed too quickly because it was misadjusted, and that Defendants were at fault. *See* Pl.'s Opp'n at 3; Defs.' Mot. at 7.

**B. Procedural History**

Mr. Ersado initially filed his Complaint, claiming both negligence and negligence *per se*, in the Superior Court of the District of Columbia. *See* Notice of Removal ¶¶ 1, 10, ECF No. 1. Marriot removed the case to this Court. *Id.* The parties consented to proceed before a magistrate judge for all purposes, including trial, and this matter was referred to the undersigned. *See* Min. Order, Aug. 29, 2017.

After the parties conducted discovery, Marriott and Rockpoint moved for summary judgment. *See* Defs.' Mot. The Court granted that Motion and stayed the deadline for an appeal pending the release of a Memorandum Opinion setting forth its reasoning in more detail. *See* Min. Order, Mar. 31, 2021.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs summary judgment motions, which may be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether summary judgment is appropriate, a court must view the evidence and inferences in the light most favorable to the party opposing summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 248; *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23–24 (D.C. Cir. 2013). The court must determine whether the evidence, when viewed through that favorable lens, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

Under Federal Rule of Civil Procedure 56, the moving party bears the burden of demonstrating an absence of genuine dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a summary judgment motion, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). "The mere existence of a scintilla of evidence" in support of the nonmoving party's position is not enough. *Anderson*, 477 U.S. at 252. The chance that a jury "'might speculate in the plaintiff's favor'" also is "'simply insufficient to defeat summary judgment.'" *Athridge v. Aetna Casualty*

*& Surety Co.*, 604 F.3d 625, 631 (D.C. Cir. 2010) (quoting *Montgomery v. Chao*, 546 F.3d 703,708 (D.C. Cir. 2008)).

## DISCUSSION

Mr. Ersado raises claims under two theories of negligence: Count I pleads common law negligence claims, and Count II invokes the doctrine of negligence *per se*. *See* Compl. ¶¶ 16–25. A plaintiff in a negligence action generally must prove that the defendant owed the plaintiff a duty to conform to a standard of care, that the defendant deviated from that standard of care, and that the deviation proximately caused the plaintiff's injury. *See Iacangelo v. Georgetown Univ.*, 595 F. Supp. 2d 87, 91 (D.D.C. 2009); *Carty v. CVS Pharmacy, LLC*, 264 F.3d 190, 195 (D.D.C. 2017). "The doctrine of negligence *per se* represents a slight variation on this general rule," and in some cases "permits a plaintiff to rely on a statute or regulation as proof of the applicable standard of care." *Iacangelo*, 595 F. Supp. 2d at 91 (internal citations and quotation marks omitted). Defendants seek summary judgment on both negligence claims, asserting that there is no material factual dispute and that the claims must be resolved in their favor as a matter of law. They also seek summary judgment on their affirmative defense of contributory negligence. Mr. Ersado counters that material issues of fact preclude the award of summary judgment, and that his claims should proceed to trial under both a negligence and negligence *per se* theory. The Court will address each argument below, beginning with negligence *per se*.

### I. NEGLIGENCE PER SE

Under the negligence *per se* doctrine, "where a particular statutory or regulatory standard is enacted to . . . prevent the type of accident that occurred,. . . an unexplained violation of that standard renders the defendant negligent as a matter of law." *Grana v. Runyon*, No. 18-cv-2293, 2020 WL 1508588, at *3 (D.D.C. Mar. 30, 2020) (internal citation and quotation marks omitted); *see also Sibert-Dean v. Washington Metro. Area Trans. Auth.*, 826 F. Supp. 2d 266, 274 (D.D.C.

2011). To prevail on a negligence *per se* claim, a plaintiff must demonstrate: (1) that the relevant regulation or statute "is meant to promote safety;" (2) that the plaintiff is "a member of the class to be protected by the statute [or regulation];" (3) that the relevant regulation or statute was violated; and (4) the plaintiff's "injury resulted from the type of risk against which the statute was designed to protect." *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 674 (D.C. 1983); *Ginsberg v. Granados*, 963 A.2d 1134, 1140 (D.C. 2009) (internal citations omitted). The statute or regulation also must impose a specific standard of care beyond the common law duty of reasonable care and contain "specific guidelines to govern behavior." *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558 (D.C. Cir. 1993)); *see also Sibert-Dean*, 721 F.3d at 703.

Mr. Ersado bases his negligence *per se* claim on the District of Columbia Construction Codes ("DCCC"), which include the District of Columbia Building Code ("DCBC") and the District of Columbia Property Maintenance Code ("DCPMC"), the latter of which incorporates the International Property Maintenance Code ("IPMC") §§ 301.1–2.[3] *See* Compl. ¶ 21; Pl.'s Opp'n at 19–26. Defendants contend that the Court should enter summary judgment in their favor on Mr. Ersado's negligence *per se* claim because the cited regulations and statute are "inapplicable" to the facts of this case or "merely reflect the common law duty of reasonable care" that cannot establish negligence *per se*. Defs.' Mot. at 11. Mr. Ersado counters that

[3] Mr. Ersado also bases his negligence *per se* claim on two other statutes: the American National Standard ("ANSI") A156.4 and the Americans with Disabilities Act ("ADA") § 404.2.8. *See* Compl. ¶ 21; Pl.'s Opp'n at 24–26. However, Defendants argue—and Mr. Ersado appears to concede—that neither the ADA nor ANSI establishes the type of specific safety obligation on which a negligence *per se* claim could be based in this case. *See* Pl.'s Opp'n at 24–25; Reply at 6–7. To the extent that Mr. Ersado maintains that the ADA and ANSI are relevant to establish the duty of care for his general negligence claim, that argument will be addressed below.

Defendants' violation of those safety standards caused his injury and constitutes negligence *per se*, and that material factual disputes preclude grating Defendants' motion. *See* Pl.'s Opp'n at 18–20. Marriott and Rockpoint are entitled to judgment as a matter of law on the negligence *per se* claim because Mr. Ersado has failed to establish that the alleged defect in the door violated specific regulatory or statutory safety guidelines that go beyond the general duty to exercise reasonable care and are designed to protect hotel guests like Mr. Ersado.

### A. The Cited DCCC Regulations Do Not Impose Specific Duties on Defendants, Nor Is There Evidence that Either Provision Was Designed to Prevent Mr. Ersado's Injury.

The text of the DCBC and DCPMC clearly indicates that both sets of regulations are intended to promote safety. They provide in pertinent part that:

> [t]he purpose of the *Building Code* is to establish minimum requirements to safeguard the public health, safety, and general welfare through structural strength, means of egress facilities, stability, sanitation, adequate light and ventilation, energy conservation, accessibility, sustainability, and safety to life and property from fire and other hazards attributed to the built environment, and to provide safety to fire fighters and emergency responders during emergency operations.

D.C. Mun. Regs. tit. 12 § 101.2.4. Similarly, the regulations indicate that

> [t]he purpose of the Property Maintenance Code is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required therein.

*Id.* § 101.4.5.4. As the IPMC is incorporated into the DPMC, the IPMC has a sufficient connection to the DPMC's public safety goals to also qualify as a regulation intended to promote safety. Thus the DCBC, DCPMC, and IPMC all satisfy the first element necessary to establish a negligence *per se* claim.

Mr. Ersado has not, however, demonstrated that the DCBC articulates "specific guidelines" designed to prevent the injury he sustained. *Sibert-Dean*, 721 F.3d at 703. He

correctly notes that violations of the DCBC can constitute negligence *per se*. *See* Pl.'s Opp'n at 21; *see generally Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 687 (D.C. Cir. 1987). But he fails to identify a specific provision of the DCBC that governs the maintenance and operation of doors. That omission distinguishes this case from *Perkinson*, where the Court looked to D.C. Mun. Regs. § 603.5, a specific provision within the D.C. Building Code requiring "steps in places of public assembly [to] have a 'nonslip' surface," and determined "[t]hat [the] requirement [wa]s clearly intended to prevent precisely the type of accident suffered by [the plaintiff]— slipping on the stairs." *Id.* at 692 (internal citations omitted). Similarly, in *H.R.H. Const. Corp. v. Conroy*, 411 F.2d 722, 723 n.3 (D.C. Cir. 1969), where the plaintiff fell through a piece of plywood covering an opening in the floor, the D.C. Circuit looked beyond the DCBC's general provisions to a more specific accompanying regulation that mandated particular spacing and placement requirements for protective objects used to cover floor openings. And in *Elliott v. Michael James, Inc.*, 559 F.2d 759, 762–63 (D.C. Cir. 1977), the Court found that a violation of a D.C. Building Code provision specifically prohibiting doors that needed keys to unlock from the inside established negligence *per se* in a case where a stabbing victim could not exit the building. At bottom, to raise a triable issue of negligence *per se* based on the DCBC, Mr. Ersado must identify a specific provision and/or an accompanying regulation that mandates *concrete* requirements whose violation caused his injury. His reliance on general safety requirements within the code is not enough.[4] *See Lewis*, 463 A.2d at 674 (holding that negligence *per se* jury

[4] Mr. Ersado also cites an unreported case, *Marsden v. Redstone Dev. Corp*, Civ. A. 87-1248 (OG), 1998 WL 8280 (D.D.C. Jan. 25. 1988). *See* Pl.'s Opp'n at 23–24. However, the Court is unpersuaded by *Marsden*, as it did not address whether the plaintiff's cited code provision imposed "specific duties" on the defendant. *See McNeil Pharm.*, 686 A.2d at 579; *Ginsberg,* 963 A.2d at 1140.

instruction was not warranted where plaintiffs allegedly violated building code provision requiring neighboring property and structures to be "sufficiently supported").

Mr. Ersado also invokes the IPMC, which generally "governs the minimum conditions and responsibilities of persons for maintenance of structures . . . ." *Id.* § 101.4.5; Int'l Prop. Maintenance Code § 301.1 (Int'l Code Council, Inc. 2006).[5] Mr. Ersado and his expert witness, Mr. Leshner, have not identified any IPMC provisions that expressly address the maintenance and operation of doors to support their assertion that the IPMC was designed to prevent Mr. Ersado's injury. *See* Pl.'s Opp'n, Ex. 5 ("Leshner Inspection Report") 3–4, ECF No. 25-1. Instead, Mr. Ersado cites an IPMC provision listed under the "General" section of the IPMC, which states:

> The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.

*Id.* § 301.2; Pl.'s Opp'n at 20–21.

Mr. Ersado contends that IPMC § 301.2 encompasses a duty to maintain doors in a safe condition. *See* Pl.'s Opp'n at 21–23. However, that provision provides only a *general* standard of care for all structures, and there is no indication that it was enacted to protect against any *specific* situation or injury. Mr. Ersado's expert witness himself admitted that the cited provision "is not specific to any particular kind of equipment," is "not limited to doors or door closings," but rather applies to "all type[s] of equipment." Pl.'s Opp'n., Ex. 3 ("Leshner Dep.") at 136

[5] Available at International Code Council website: https://codes.iccsafe.org/content/IPMC2018/chapter-3-general-requirements?site_type=public).

(55:6–57:10), ECF No. 25-1. Thus the cited IPMC provision does not support a negligence *per se* claim against the Defendants. *See generally D.C. v. Mitchell*, 533 A.2d 629, 639 (D.C. 1987) (violation of statute requiring Department of Corrections to be "responsible for the safekeeping, care, protection, instruction, and discipline" of inmates implicitly imposed a common law duty of reasonable care without specifics that could give rise to a *negligence per se* claim); *Thoma v. Kettler Bros., Inc.*, 632 A.2d 725, 728–29, 729 n.8 (D.C. 1993) (noting that OSHA regulation providing that "[d]ebris and other loose materials[] shall not be allowed on or under stairways" was too general to support a negligence *per se* instruction because it did not differ from the common law standard of reasonable care).

In sum, Mr. Ersado's negligence *per se* claim fails as a matter of law because he relies solely on general provisions that do not impose a specific duty or establish specific guidelines designed to prevent the injury he sustained when the door closed on his hand. The Court therefore grants summary judgment in Defendants' favor on Count II.

## II. GENERAL NEGLIGENCE

Under District of Columbia law, a plaintiff "in a negligence action bears the burden of proof on three issues: 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.'" *Toy v. D.C.*, 549 A.2d 1, 6 (D.C. 1988) (quoting *Meek v. Shepard*, 484 A.2d 579, 581 (D.C. 1984)). A hotel, as a landowner, is liable for dangerous conditions that "are discoverable in the exercise of ordinary care." *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 742 (D.C. 1989). In such cases, the landowner's liability "is premised on an obligation of due care to protect customers from risks created by employees . . . or other customers." *Hudson v. Harris Teeter, LLC*, 292 F. Supp. 3d 496, 500 (D.D.C. 2018) (internal quotation marks and citations omitted). "'To make out a prima facie case of liability predicated upon the existence of a dangerous

condition it is necessary to show that the party against whom negligence is claimed had actual notice of the dangerous condition or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected.'" *Sullivan v. AboveNet Comm'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015) (quoting *Anderson v. Woodward & Lothrop*, 244 A.2d 918, 918–19 (D.C. 1968) (per curiam)); *see also Hudson*, 292 F. Supp. 3d at 500; *Lynn v. D.C.*, 734 A.2d 168, 170 (D.C. 1999).

Mr. Ersado contends that Room 952's door closing speed was a dangerous condition about which Defendants had actual or constructive notice, and that Defendants are therefore liable for negligence. *See* Pl.'s Opp'n at 11. Defendants argue that summary judgment should be entered in their favor because Mr. Ersado has not provided evidence to support a finding of actual or constructive notice of a dangerous or unsafe condition. *See* Defs.' Mot. at 17–18. Mr. Ersado counters that the question of notice is typically reserved for a jury, and that factual disputes preclude the entry of summary judgment. *See* Pl.'s Opp'n at 10–12. The Court finds that Mr. Ersado has not produced sufficient evidence from which a reasonable jury could find that Defendants either knew or should have known that Room 952's door was dangerous.

**A. Mr. Ersado Has Not Produced Evidence that Demonstrates that Defendants Had Actual Knowledge that Room 952's Door Was Dangerous.**

There is no evidence that Defendants had actual notice of any dangerous condition. Mr. Ersado argues that because Marriott had policies in place to regularly inspect guestroom doors, Defendants knew that the door was in a dangerous condition. *See* Pl.'s Opp'n at 13. An internal Marriott policy required an annual operational audit, in which an external auditor would inspect three random guestrooms for safety and maintenance. *See* Pl.'s Opp'n, Ex. 4, Tr. of Shelly DiMeglio ("DiMeglio Tr.") 163–64 (15:17–16:8), 171–72 (47:6–48:18), ECF 25-1. Mr. Ersado does not point to any audit reports that warned Marriott about an unsafe door in Room 952.

Accordingly, no reasonable juror could infer that these audits gave Marriott or Rockpoint actual notice of an unsafe door on Room 952. Another Marriott policy required the hotel itself to inspect each individual guestroom at least three times annually in accordance with a checklist of conditions, including whether the room door was in good condition and closed securely and quietly. *See* DiMeglio Tr. at 164–65 (20:19–21:18), 168–70 (36:3–44:18). Marriott last inspected Room 952 in December 2014; at the time, there were no defects, and the door closed properly. *Id.* at 163–64 (16:16–17:13). Thus no reasonable juror could infer that these inspections gave Marriott or Rockpoint actual notice of an unsafe door on Room 952.

Marriott also learned about problems—including problems with room doors—through guest comments and housekeeping's regular maintenance. *Id.* at 164 (19:2–10). When performing a checklist of daily service tasks, Marriott housekeepers were required to report any guestroom issues, including doors that closed too quickly or made too much noise. *Id.* at 164–65 (19:14–21:12). Mr. Ersado has not identified any inspector reports, customer complaints, or housekeeping reports regarding Room 952 or its door. Nor did discovery yield evidence of prior accidents involving the door which might have alerted Marriott to the problem. *See Haney v. Marriott Int'l, Inc.*, No. 05-cv-2501, 2007 WL 2936087, at *6 (D.D.C. Oct. 9, 2007) ("[T]he lack of prior incidents is relevant to the question of whether defendant[s] had actual notice of the purported defect."). Nothing in the record demonstrates that Defendants were aware of any dangerous conditions related to Room 952's door. Without such evidence, Mr. Ersado cannot show that Defendants had actual notice.

The fact that "[n]otice is a question ordinarily left for the jury" does not salvage Mr. Ersado's actual notice arguments. *Hudson*, 292 F. Supp. 3d at 500. To defeat summary judgment Mr. Ersado must substantiate his allegations "with evidence that a reasonable jury

could credit in support of each essential element of [his] claims." *Rodriguez v. Adams Restaurant Gp.*, 308 F. Supp. 3d 359, 362 (D.D.C. 2018) (internal quotation marks omitted). Thus to raise a triable issue of actual notice, Mr. Ersado needs evidence that could reasonably be credited as proof that Defendants knew about the door's defect. As there is no such evidence in the record, the Court can resolve this issue in Defendants' favor as a matter of law "because of the failure to present prima facie proof of liability." *Hudson*, 292 F. Supp. 3d at 500.

### B. Mr. Ersado Has Not Produced Evidence that Defendants Should Have Known that Room 952's Door Was in a Dangerous Condition.

The record also lacks evidence from which a reasonable juror could infer that Defendants had constructive notice of a dangerous condition. Mr. Ersado argues that Defendants should have known that the door was defective and dangerous because Marriott had inspection policies in place and because closing mechanisms gradually wear down. *See* Pl.'s Opp'n at 11–13. Defendants counter that Mr. Ersado's constructive notice arguments are speculative, and that he has not identified evidence that would establish that Defendants had constructive notice of the door's defect. *See* Def.'s Mot. at 18.

To show constructive notice, a plaintiff "'must present evidence that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered.'" *Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 127 (D.D.C. 2016) (quoting *Wilson v. Wash. Metro. Area Transit Auth.*, 912 A.2d 1186, 1190 (D.C. 2006)). To determine whether this standard has been met, courts may consider the length of time that the condition existed, whether it was obvious or latent, its severity or dangerousness, and whether it was in a busy or conspicuous location. *See Briscoe v. D.C.*, 62 A.3d 1275, 1279 (D.C. 2013). "[T]he fact that a defect exists is not sufficient in and of itself to provide constructive notice of that defect to the entity that maintains the property." *Wash. Metro. Area Transit Auth.*

*v. Ferguson*, 977 A.2d 375, 378 (D.C. 2009). Similarly, when the plaintiff proves "only that a hazard existed for an undetermined period of time, [he] has not shown that the defendant had constructive notice." *Wise v. United States*, 145 F. Supp. 3d 53, 66 (D.D.C. 2015) (citing *Wilson*, 912 A.2d at 1190); *see also Mixon v. Wash. Metro. Area Transit Auth.*, 959 A.2d 55, 60 (D.C. 2008) (holding that the defendant did not have constructive notice where a jury would have to "engage in sheer guesswork" to determine if a dangerous condition had existed long enough to form constructive notice).

Mr. Ersado's constructive notice arguments rest primarily on the report of his expert, Michael Leshner. *See* Pl.'s Opp'n at 11. One week after his injury, Mr. Ersado recorded two videos of the Georgetown Marriott Room 952's door speed, which Mr. Ersado alleges portray speeds consistent with the door's speed when he was injured. *See* Ersado Decl. at 120. Based solely upon his review of these videos and an understanding that Mr. Ersado caught his finger in the hinge side of the door, Mr. Leshner reported that the door took 1.39-1.49 seconds to close when opened at a 90-degree angle. *See* Leshner Dep. at 128 (23:5–23); Pl.'s Opp'n, Ex. 5 ("Leshner Report") 194, ECF No. 25-1. Mr. Leshner concluded that Room 952's door had an "excessive" closing speed, which indicated that it was "grossly misadjusted," "created a hazard" for users, and, if Marriott had properly maintained the door closer, "this incident would not have occurred." Leshner Report at 196–97. Mr. Leshner noted that "closing speeds must be monitored on a regular basis, because [closing mechanism] adjustments may drift over time and require periodic maintenance." *Id.* at 196. Mr. Leshner inferred that if a closing mechanism is "grossly out of adjustment, it probably hasn't been maintained in a very long time." Leshner Dep. at 138 (62:17–63:16). According to Mr. Leshner, a door's adjustment "may change over time very gradually," and he "wouldn't expect a door's closing speed to go from six seconds

to one and a half seconds in a short period." *Id.* at 134 (46:16–22).

Mr. Leshner does not detail what "proper" maintenance would entail, does not provide a time estimate for when door speed changes would have become apparent through reasonable maintenance procedures, and does not define a "short period" or "regular basis." Notably, Mr. Leshner admitted that it was possible that the door's closing mechanism malfunctioned, but ascertaining that would have required him to disassemble the door, which he did not do. *Id.* at 134 (46:23–47:15). Overall, Mr. Leshner could not determine how long the door had been misadjusted. *Id.* (46:9–15).

Mr. Leshner's inability to ascertain how long the door had been misadjusted is a fatal flaw in Mr. Ersado's constructive notice theory. As noted, constructive notice requires "evidence that a dangerous condition existed for such a duration of time that had reasonable care been exercised the hazard would have been discovered." *Wilson*, 912 A.2d at 1190. Proving the duration of time that a condition existed is "critical" and "important" to that inquiry. *Id.* at 1190–91. When a plaintiff "proves only that a hazard existed for an undetermined period of time, [he] has not shown that the defendant had constructive notice." *Martin*, 206 F. Supp. 3d at 128 (quoting *Wise*, 145 F. Supp. 3d at 66); *see Haney*, 2007 WL 2936087, at *7 (awarding summary judgment to defendant on issue of constructive notice where the plaintiff contended that housekeeping examined his room two days prior to falling in a guestroom bathtub, but provided no evidence that a dangerous condition existed or how long it persisted). Mr. Leshner's conclusion that he "wouldn't expect a door's closing speed to go from six seconds to one and a half seconds in a short period," does not provide sufficient evidence regarding when the door's defective condition arose; the door could have been defective for a few hours, days, or months.

Accordingly, there is no evidence in this case from which the jury could infer, without speculating, that the door's closing mechanism was defective when the housekeepers last inspected the room. *See Ferguson*, 977 A.2d at 376 (concluding that the fact that a tree grate was sturdy did not answer when the grate broke or whether the defendant could have learned about the defect had it exercised reasonable care).

The Court's analysis in *Martin* is instructive. *See* 206 F. Supp. 3d at 128. There, plaintiff tripped over a wrinkled mat in a hotel lobby. Plaintiff's expert examined the mat and concluded that the wrinkles could only be formed over "hours and hours, if not days and days," and would not occur over a short period of time. *Id.* at 119. The court concluded, "without crediting [the expert's] speculative assertion that the wrinkles must have been present by the time the mat was laid, there is no evidence in the record from which the jury could infer, without speculating, that the wrinkles were present when [hotel] employees may have inspected the mats." *Id.* at 129 (internal quotation marks and citation omitted). Here, inferring that the door was misadjusted for an extended period is similarly speculative.

Mr. Ersado cites *Sullivan* and *Bostic v. Henkels & McCoy, Inc.* to argue that constructive notice can be found even if the plaintiff is unable to identify specific dates when the dangerous condition existed. *See* Pl.'s Opp'n at 9–11. But in those cases, the testimony established a rough timeframe when the dangerous condition existed. In *Sullivan*, there was testimony that another person had tripped on the same depression around a manhole cover approximately two weeks before plaintiff, and that the depression had not changed between the time of that earlier incident and the plaintiff's injury. *See* 112 A.3d at 357. In *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 426–27 (D.C. 2000), the plaintiff's testimony that the plywood covering a dangerous walkway was "just as it always had been" for several months allowed a permissible inference

that the dangerous condition had existed for some time and could support a finding that the defendant had constructive notice. Mr. Ersado, in contrast, has only his expert's speculation about how long it would take for the door's condition to deteriorate to support his contention that the door must have been maladjusted for an extended period of time before his injury.

Mr. Ersado's assertion that a jury could infer constructive notice from "the timing of the inspection and the evidence that defect would occur gradually" also lacks merit. Pl.'s Opp'n at 13. Marriott instructed its housekeepers to regularly inspect the closing speed of doors and report any issues. *See* DiMeglio Tr. at 164–65 (20:19–21:18), 173 (53:1–5). When there is evidence that a property owner failed to adhere to its internal inspection policy, a jury may infer that a property owner would have discovered a dangerous condition if it had exercised reasonable care. *See Washington Metro. Area Transit Auth. v. Jeanty*, 718 A.2d 172, 173, 178 (D.C. 1998) (concluding WMATA's failure to follow its policy to inspect a door speed regulator biweekly permitted a reasonable inference that WMATA would have known about a defective bus door if it had exercised reasonable care). Here, in contrast, there is no evidence that Georgetown Marriott staff failed to inspect guestrooms, doors, or closing mechanisms. Mr. Ersado does not dispute that Georgetown Marriott staff formally inspected the room in December 2014, that housekeeping inspected the room daily, and that there were no reports of defects from either type of inspection. *See* Pl.'s Opp'n at 11, 13. Absent evidence that the door's defect existed before the most recent inspection, it would be wholly speculative to conclude that Defendants would have discovered the dangerous door if Marriot staff had properly inspected the room. In sum, the evidence developed during discovery does not provide a basis for a jury to reasonably infer that Defendants had constructive notice that Room 952's door was dangerous.

Because Defendants had neither actual nor constructive notice of any dangerous condition related to the door, the negligence claim fails as a matter of law. Accordingly, the Court grants summary judgment should be granted in favor of Defendants on the negligence claim raised on Count II.

## III. CONTRIBUTORY NEGLIGENCE

The Court's grant of summary judgment in Defendants' favor on both the negligence and negligence *per se* claims fully resolves the issue of liability. Accordingly, the Court has no occasion to address Defendants' contributory negligence affirmative defense.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment.

Dated: March 29, 2023

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE